IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In re the Matter of Personal Restraint of )
) No. 37306-1-III
Zachary Joseph Biggs. )
)
) UNPUBLISHED OPINION
)
)

FEARING, C.J. — Pending before this court is a personal restraint petition by which

Zachary Biggs seeks to vacate his convictions on two counts of rape in the first degree

and a felony violation of a domestic violence protection order. We deny the petition.

In 2015, Asotin County Superior Court Judge Scott Gallina, after a bench trial,

convicted Biggs of the three charges. In April 2018, this court affirmed the convictions.

The Washington State Supreme Court denied review on October 3, 2018. The United

States Supreme Court denied certiorari on May 28, 2019.

On October 3, 2019, Zachary Biggs filed a pro se CrR 7.8 motion in superior court.

The superior court transferred the motion to this court to handle as a personal restraint

petition. This court subsequently remanded the matter for two reference hearings. The

superior court appointed counsel for Biggs at the time of the first reference hearing. This

counsel continues to represent Biggs today. During the first reference hearing, counsel

raised new contentions. Both reference hearing judges entered findings of fact, on which we now rely.

We now hold that time bars the additional assigned errors raised by counsel. We also hold that Biggs' initial contentions lack merit.

FACTS

This prosecution involves alleged rape of a wife by her husband. Zachary and Stacey Biggs were married with children. We often refer to Zachary Biggs as "Biggs" and Stacey Biggs as "Stacey." In November 2013, Stacey separated from Biggs out of concern for her husband's aberrant behavior. Biggs had falsely claimed to neighbors that Stacey, their newborn baby, and Biggs had recently been raped.

In December 2013, Stacey filed for divorce and procured a protection order to preclude Zachary Biggs from contacting her. Biggs moved to his mother's abode.

Stacey occasionally saw Zachary Biggs thereafter. Biggs behaved normally and politely during these encounters. At a filling station, Biggs gentlemanly told Stacey that his mother had fallen ill and that he consequently had not been eating.

On the afternoon of December 10, 2013, Stacey delivered a child to Biggs' mother's house. Stacey noted that the mother presented in fine health, contrary to Biggs' claim, but the home lacked food. Stacey left, but confronted guilt for not bringing spare groceries to Biggs. Stacey returned to her mother-in-law's home, at 8 p.m., bearing groceries. In the meantime, Biggs' mother had departed the house for work.

As Stacey approached the back door of Zachary Biggs' mother's abode the night of December 10, Biggs opened the door. Biggs inquired of Stacey: "'What are you doing here?'" Report of Proceedings (RP) at 191, *State v. Biggs*, No. 33721-9-III. Stacey replied: "'Oh, I brought you some food.'" RP at 191. Biggs interjected: "'Are the boys with you?'" RP at 191. Stacey responded: "'No.'" RP at 191. Biggs instantly placed a chokehold on Stacey's neck and threw her to the floor. He pounced on Stacey and yelled in her face: "'Why are you here?'" RP at 191. "'Who sent you?'" RP at 191. Biggs demanded Stacey enter his room. Once the two entered the room, Biggs shut and locked the door.

Zachary Biggs flung Stacey on the bed and repeatedly instructed her to remain silent. Biggs, with his forearm, applied pressure to Stacey's neck while she lay trapped on the bed. Biggs held a machete and again interrogated Stacey as to who sent her to his mother's home. He repeatedly threatened her. Stacey pleaded with Biggs to release her to return home. In trial testimony, Stacey recalled Biggs menacingly sneering:

> You ain't going home. I'm going to kill you. I'll have the kids. I'll hide your body before this is all over and done with, and, before anybody knows you're missing, I'll be gone and so will you.

RP at 194.

While entrapping Stacey Biggs on the bed, Biggs claimed that individuals in masks had impersonated him. Biggs pushed and pulled on Stacey's lips, nose, and eyes, and dug into her face. Biggs declared that he needed to confirm the body he attacked was Stacey's

corpus. Biggs also insisted to Stacey that he witnessed her performing oral sex on other men. Biggs informed Stacey that she would be dead by night. Biggs then held a large sharpening stone in his right hand and threatened to bash Stacey's face if she did not cooperate with him.

Zachary Biggs demanded sex from Stacey while holding a machete to her neck. Biggs grabbed Stacey's hair and forced her face to his groin. Stacey performed oral sex until nearly retching. During the sexual assault, Biggs named the women with whom he engaged in sexual conduct during the couple's separation. Biggs released Stacey.

After releasing Stacey from his grip, Zachary Biggs carped to Stacey: "'[y]ou're not doing it like I showed you.'" RP at 202. Biggs regrabbed Stacey by her hair and placed her on the hard floor. Biggs uttered: "'[i]f you don't make love to me like my wife I'm going to stab you.'" RP at 203. Biggs then vaginally raped Stacey on the floor. Biggs reached to retrieve his machete. Stacey pleaded with him that she had been in a car accident and intercourse on a hard floor hurt her back. She cried in pain. After threatening her again, Biggs allowed Stacey to move to the bed.

Under duress, Stacey submitted to Zachary Biggs again while the two lay on the bed a second time. Stacey did not think she would leave the bedroom alive.

After nearly three hours, Zachary Biggs ended the assault and allowed Stacey to dress. Biggs asked Stacey to drive him to a store so he could purchase a cigar. Stacey

complied. At the store, Biggs threatened Stacey with death if she reported his conduct.

He then acted as if checking his watch, although not wearing one, and remarked:

> Yeah, about this time tomorrow I'll probably be in jail. And that's all right; I'll do my time. 'Cause when I get out I'll come find you, I'll sneak in the middle of the night and I'll slice your throat. Or I'll come out to your work, wait for you to get off and run your ass and your car into the river and I'll kill you.

RP at 209-10.

On December 11, 2013, Stacey Biggs told coworkers of the rape after her colleagues inquired about her disquietude. Coworkers reported the rape to law enforcement.

Asotin County Sheriff Deputy Jeffrey Polillo spoke with Zachary Biggs about the alleged rape at Biggs' request. Biggs was then incarcerated in jail on other charges. Biggs and Deputy Polillo knew each other from prior law enforcement contacts and had a relationship of mutual respect. When Biggs requested the conversation, Deputy Polillo did not know of Stacy Biggs' rape allegation.

During the jail interview between Zachary Biggs and Deputy Jeff Polillo, Biggs related a story about possessing evidence that people were clones, claimed that he once saw someone at a casino identical to him, asserted that the clone-makers had drugged him to take a mold of his face for the clones, and reported that, when he awoke from the drug trip, he discovered a Twizzler candy rope inserted into his rectum. Biggs asked Polillo

how Stacey Biggs could accuse him of rape "when she came to my house wanting to fuck me." RP at 306.

One year after Zachary Biggs' trial, the Asotin County sheriff terminated Deputy Jeff Polillo's employment for misconduct. Biggs then sought information relating to Deputy Polillo's termination, but the sheriff denied the request due to a restraining order, in a lawsuit initiated by Polillo, preventing the release of Polillo's personnel file to third parties. According to Deputy Prosecuting Attorney Curt Liedkie, the incident, for which the sheriff fired Polillo, occurred after Zachary Biggs' trial.

PROCEDURE

The State of Washington charged Zachary Biggs with two counts of rape in the first degree and one count of felony violation of a domestic violence court order. The charges alleged that Biggs bore a deadly weapon when committing the crimes against a family or household member.

Attorney Noel Pitner first represented Zachary Biggs in the prosecution. Pitner performed few services before Biggs procured his removal and began to represent himself. Before his removal, Pitner procured a ruling directing a competency evaluation of Biggs.

In 2018, two years after Zachary Biggs' trial, the State of Washington suspended Noel Pitner for two years from practicing law. The state of Idaho also suspended Pitner's

license to practice. The misconduct that precipitated the suspension occurred after Pitner's representation of Biggs.

Dr. Daniel Lord-Flynn of Eastern State Hospital conducted a competency examination of Zachary Biggs and determined that Biggs possessed capacity to understand the court proceedings and participate in his own defense. Dr. Lord-Flynn diagnosed Biggs with a personality disorder.

After the exit of Noel Pitner as counsel for Zachary Biggs, the superior court appointed John Fay as stand-by attorney for Biggs. Biggs eventually agreed to Fay serving fully as his counsel, and Fay represented Biggs through his trial.

In 2012, the Washington State Supreme Court created the Standards for Indigent Defense (SID). These standards created recommended minimum experience requirements and maximum case load limits for criminal defense attorneys providing indigent defense services. Although being stated in mandatory terms, the preamble to the SID declares that the standards provide "guidance" only.

Standards 14.2(B) and (D) list minimum experience requirements for lawyers who represent defendants charged with Class A felonies and sex offenses. Attorneys on Class A felonies must have two years of criminal law experience and have "been trial counsel alone or with other counsel and handled a significant portion of the trial in three felony cases that have been submitted to a jury." SID 14.2(B)(iii). Attorneys on sex cases must also have "been counsel alone of record in an adult or juvenile sex offense case or shall be

7

supervised by or consult with an attorney who has experience representing juveniles or adults in sex offense cases." SID 14.2(D)(ii).

When a lawyer lacks the minimum experience requirements of SID 14.2, the lawyer may associate with another lawyer who meets these qualifications: "Attorneys working toward qualification for a particular category of cases under this standard may associate with lead counsel who is qualified under this standard for that category of cases." SID 14.2 n.1. This standard further reads that an unqualified lawyer may represent a client in a sex offense prosecution if the lawyer is "supervised by or consult[s] with an attorney who has experience representing juveniles or adults in sex offense cases." SID 14.2(D)(ii).

Prior to representing Zachary Biggs, John Fay had served as counsel on a charge of rape with forcible compulsion. This prosecution was resolved without a trial. Also at the time, Fay had only conducted two misdemeanor trials. By the time of Biggs' trial in this prosecution, Fay had 1.5 years of criminal defense experience and a half year of prosecution experience. Thus, by the time of trial, Fay barely met the minimum requirement of two years' experience as either a prosecutor or defense attorney under Washington's SID. By the time of trial, Fay had served as second chair on a third strike trial for assault in the first degree and first chair in a trial for robbery and burglary in the first degree, both Class A felonies. RP 292 (RH 1). This experience did not qualify Fay under SID guidance to handle Class A felonies and sex offenses on his own. Fay did not

meet SID 14.2(B) and (D) prior to being assigned to represent Biggs, and still did not at the time of trial.

Because of his lack of experience, John Fay associated with Richard Laws. By the time of representing Zachary Biggs, Fay had associated with Laws in thirty other felony cases in order to satisfy the indigent defense standards. Fay consulted with Laws on two matters of strategy in Biggs' prosecution. Laws rarely interacted with Biggs and did not participate in trial.

Zachary Biggs waived his right to a jury trial. Attorney John Fay recommended to Biggs that he waive the constitutional right because Asotin County Superior Court Judge Scott Gallina had acquitted others accused of sex crimes. Fay also worried that Zachary's demeanor and personality would alienate a jury if he chose to testify at trial and that Judge Gallina would be less likely to be offended by Zachary's potential trial testimony.

Zachary Biggs initially pled guilty to one count of rape in the second degree as part of a plea deal. Under this plea agreement, Biggs intended to request a special sex offender sentencing alternative (SSOSA). When Biggs obtained his SSOSA evaluation, he learned that one convicted of rape in the second degree is not eligible for a SSOSA sentence. The deputy prosecutor, his attorney, and the judge, did not earlier know about this requirement of SSOSA eligibility. Biggs moved to withdraw his guilty plea, and Asotin County Superior Court Judge Scott Gallina granted the motion.

On July 6, 2015, after Zachary Biggs withdrew his guilty plea, the trial court conducted a hearing to schedule the trial date. At the start of the hearing, the State represented that jail officials had placed Biggs in a court holding cell, but Biggs requested to return to his jail cell. During the hearing, outside the presence of Biggs, the superior court scheduled trial for July 30 and a pretrial hearing date for July 20.

Zachary Biggs attended the next pretrial hearing on July 20, 2015. At that hearing, defense counsel John Fay mentioned that trial would be before the court, rather than a jury. Biggs did not object to the comment.

Trial commenced on July 30, 2015, before Asotin County Superior Court Judge Scott Gallina. At the beginning of the trial, the trial court commented that the trial would be a bench trial. Defense counsel John Fay responded that Zachary Biggs had signed a jury waiver. Zachary Biggs did not object.

Zachary Biggs defended the rape charges on the ground that Stacey engaged in consensual sex and lied about a rape. During trial, Deputy Jeff Pollilo testified to the conversation he had with Zachary Biggs in jail. His testimony suggested that Biggs suffered from a mental illness. Polillo averred that Biggs insisted that he and Stacey engaged in consensual sex initiated by Stacey on the day for which the State brought charges.

During trial, the court admitted letters written by Zachary Biggs to various individuals. The State argued that the letters attempted to influence witnesses such that

Biggs engaged in witness tampering. Biggs addressed one letter to Eugene "Geno" Grende. The letter instructed Grende that "now would be the time to have people to run into [Stacey] or talk to her." RP at 152. Trial testimony pictured Grende with a reputation for being a bully who physically assaulted people. According to a bates stamp on the letter, the State disclosed a copy of the letter to defense counsel on February 5, 2015. Defense counsel, during trial, did not complain that the State failed to earlier send him a copy of the letter.

The superior court convicted Zachary Biggs on all three counts. During sentencing, the trial court ruled the two counts of rape to be distinct acts of criminal conduct and ordered the sentences for the two counts of rape to run consecutively pursuant to RCW 9.94A.589(1)(b). The trial court distinguished the assault on the hard floor from the assault later on the bed. According to the trial court, Zachary Biggs, after releasing Stacey from the floor, possessed the opportunity to end his attack, but renewed the assault on the bed. The trial court sentenced Biggs to 309 months' confinement.

This court affirmed the convictions and sentence, but remanded to reconsider discretionary legal financial obligations. The Washington State Supreme Court denied review on October 3, 2018. The appellate mandate issued October 16, 2018. On February 5, 2019, the trial court struck the discretionary legal financial obligations from Zachary Biggs' judgment and sentence. Concurrently, Biggs also sought review in the

11

United States Supreme Court. The United States Supreme Court denied certiorari on May 28, 2019.

On October 3, 2019, Zachary Biggs filed a pro se CrR 7.8 motion in superior court. The motion raised many claims for relief, including ineffective assistance of counsel, *Brady* violations, prosecutorial misconduct, judicial bias, and other claims. After considering the motion and the State's response, the superior court transferred the motion to this court for consideration as a personal restraint petition under CrR 7.8(c)(2). This court subsequently remanded the matter for two reference hearings.

In support of his personal restraint petition, Zachary Biggs filed a 2019 letter from the Asotin County Sheriff's Office responding to a public records request from him. Biggs requested any records pertaining to a law library in the Asotin County Jail between 2013 and 2015. The Sheriff's Office responded that it had no responsive records.

In support of his petition, Zachary Biggs also filed a printout of a news article about Richard Laws being sentenced for tampering with evidence. Laws was the supervising attorney for John Fay, Biggs' trial attorney. In 2018, two years after Biggs' trial, Laws tampered with a witness. The Washington Supreme Court disbarred Laws.

John Furbee submitted a declaration in support of Zachary Biggs' personal restraint petition. Furbee declared that he saw, between 7:30 p.m. and 9:30 p.m. on December 10, 2013, the date of the alleged rape, Biggs, Stacey, and their children arrive in a car, from which Biggs exited. All appeared in a good mood. Nothing suggested a violent rape or

an argument had occurred earlier in the evening. Furbee also characterized Stacey as a dishonest, master manipulator and a chronic methamphetamine user. Furbee avowed that he did not disclose this information at trial because John Fay, Biggs' trial counsel, failed to ask the right questions. Furbee added that no defense investigator interviewed him. In his declaration, Furbee recounted an incident in 2017, after the trial, when he overheard Stacey Biggs deny ever telling her coworkers she had been raped.

Christopher Rose submitted a declaration in support of Zachary Biggs' personal restraint petition. Rose declared that he was also present on the evening of the rape and observed the same happy individuals Furbee listed in his declaration. Rose declared that no attorney or investigator interviewed him before trial.

Zachary Biggs' sister, Athena Biggs, also submitted a declaration. Athena declared that no one from the defense interviewed her before trial or prepared her for trial. Athena accused Stacey of being a liar. Athena claimed to have spoken to Stacey on December 12, 2013, two days after the rape, and Stacey admitted to telling her coworker a "'story.'" Stacey cooperated with the law enforcement investigation because officers directed anger at her for visiting Biggs when a no contact order was in place. During that same conversation Stacey also told Athena:

> Stacey told me that tender embraces led to sex, and that she never said anything to Zack about stopping. To the contrary, she described in great detail the intense love making that evening, including with her on top. She said she had never made love like that before, and that it was "the best sex [she had] ever had." She spoke of their love and confirmed she was a willing participant at all times.

13

Personal Restraint Petition (PRP), Exhibit 5 at 4. (Alteration in original).

In her declaration, Athena Biggs avowed she conversed with Asotin County Sheriff Detective Jackie Nichols, during which Nichols confirmed that Stacey had reported to her the same account of consensual sex. According to Athena, Nichols added that the State charged Biggs "so Zack could get psychological testing and 'help.'" PRP, Exhibit 5 at 5. Athena's declaration also alleged, without any detail, that Detective Nichols' report of her interview with Athena contained fabricated statements that Athena had uttered to Nichols.

With respect to a joint interview with the prosecution and defense, Athena Biggs declared:

> Soon after the meeting began, [Prosecuting Attorney] Mr. Nichols effectively kicked Mr. Fay out of the room, saying he was needed in court immediately. Mr. Fay was absent for most of the meeting. Immediately upon his leaving, the other parties, all seeking conviction, "ganged up" on me. . . . Nevertheless, [Deputy Prosecuting Attorney] Mr. Liedkie aggressively interrogated me. He was loud and forceful, leaning into the table and trying to force me into confirming inaccurate facts—false facts that could only have come from Stacey. His tactics were infuriating; isolated and shaking, I adamantly refused his asserted statements as they were simply untrue. Finally, driven to tears, like clockwork Susan appeared and ushered me away just after I heard Kurt Liedkie proclaim "We are done here"; I got the distinct impression they had employed these tactics many times before. I was simply trying to get some truth into the case, but the "professionals" weren't having it.

PRP, Exhibit 5 at 6-7.

Athena Biggs also reported, in her declaration, a conversation with John Fay. According to Athena, Fay conceded that "he was uncomfortable about exploring the issue

14

of voluntary sex, even though this was a rape case and Stacey had professed how much she enjoyed it; He actually called any such defense 'inappropriate.'"  PRP, Exhibit 5 at 8.

Darci Brown submitted a declaration in support of Zachary Biggs' personal restraint petition.  Brown declared that, in a conversation with Stacey Biggs a day or two after the rape, Stacey recanted her prior allegation of rape by Biggs.  Brown insisted that she never testified at trial to the recantation because defense counsel never interviewed her and did not know to ask the right questions.

Zachary Biggs filed a declaration from witness Cheryl Biggs.  Cheryl Biggs described incidents of Stacey being dishonest, including Stacey fabricating that her daughter was raped by another individual, collecting welfare benefits in two states simultaneously, and inventing domestic violence allegations against Biggs in order to get free hotel rooms from the YWCA.  Cheryl Biggs also averred that Biggs did not rape Stacey.  Cheryl claimed that Stacey wanted an excuse to give her coworkers for missing work for three days while enjoying a methamphetamine binge.

Christopher Perini signed a declaration, in which he avowed that he overheard, near the time of the rape, that Stacey would retaliate against Biggs for leaving her.  Perini added that Stacey did not "behave remotely like a victim" after the rape, her law enforcement interview was "heavily coached by the interviewers," and after trial he heard her say that Biggs received his just reward for cheating with other women.  PRP, Exhibit 9 at 2.

Zachary Biggs submitted an Asotin County Sheriff's Office letter denying a public records request from him. Biggs had requested records concerning Deputy Jeff Polillo's termination. The sheriff responded that he could not produce the records due to a temporary restraining order entered in a lawsuit filed by Polillo against the Sheriff's Office. The responding letter attached a copy of the order.

Zachary Biggs also submitted a second letter from the Asotin County Sheriff's Office responding to another public records request from him that sought records relating to mail to and from him during his pretrial incarceration. The response to the request included a draft substitute plea agreement, the letter from Biggs to Eugene "Geno" Grende, and a cover letter from the prosecutor's office showing it forwarded the Geno Grende letter to defense counsel on February 5, 2015, six months prior to trial. Under the substitute plea agreement, Biggs would have pled guilty to reduced charges of indecent liberties with forcible compulsion and assault in the second degree with a deadly weapon enhancement. The State would have recommended a 95-month prison term and Biggs would have reserved the right to request a SSOSA. According to Biggs, he would have accepted this plea agreement had his lawyer advised him of his standard range.

Zachary Biggs filed a declaration that recounted Stacey's drug history. He declared Stacey initiated the sexual interaction while "high and horny" and because "she loved it." PRP, Exhibit 8 at 3. Biggs also faulted his lawyer for discouraging him from testifying.

16

On May 14, 2020, this court issued an order remanding the petition for a reference hearing. The order limited the hearing to two subject matters: newly discovered evidence and ineffective assistance of trial counsel. The alleged newly discovered evidence involved sworn declarations from multiple witnesses testifying to having heard the victim recant and newly discovered impeachment evidence. Zachary Biggs' ineffective assistance claim pertained to counsel's alleged failure to interview witnesses before trial.

The superior court conducted the reference hearing on November 3, 4 and December 23, 2020. At the start of the hearing, defense counsel attempted to raise new claims of ineffective assistance of trial counsel that this court did not list in the reference hearing order. The trial court interpreted this court's order to limit the questions to answer and ruled that it would exclude argument and evidence directed at the new claims.

During the reference hearing, the superior court took testimony from Zachary Biggs' mother and sister, witness John Furbee, trial counsel John Fay, Biggs, and Asotin County's former victim-witness coordinator. At the conclusion of the hearing, the trial court issued 74 findings of fact and detailed conclusions of law answering this court's six questions. The court concluded that Biggs failed to forward newly-discovered recantation evidence in part because the declarants testified to the retractions at trial. The court further concluded that evidence that Biggs argued counsel should have presented at trial was inadmissible and the only admissible evidence that counsel failed to present was cumulative and the result of a strategic decision.

On return to this court, the State filed a supplemental response brief. Zachary Biggs' petition counsel also filed a supplemental reply brief in this court. In his supplemental reply brief, Biggs requested remand for a second reference hearing to address three additional ineffective assistance claims. Biggs asserted that his trial counsel engaged in ineffective assistance by: allegedly waiving his right to a jury trial, misadvising him of the consequences of proceeding to trial versus pleading guilty, and interviewing witnesses in the prosecutor's office. Pet'r 1st Supp. Br. at 11-15.

On July 13, 2021, this court issued an order remanding the personal restraint petition for a second reference hearing. The order directed the superior court to address five additional claims of ineffective assistance not included in the first reference hearing order and not part of the original petition. The order, paraphrased and summarized, instructed the court to answer:

> 1. Did Mr. Fay's [trial counsel's] discomfort with discussing sexual intercourse impede presentation of Mr. Biggs's defense of consent, resulting in deficient examination of witnesses?
> 2. Did Mr. Fay provide deficient performance in advising Mr. Biggs to waive his right to a jury trial?
> 3. Did Mr. Fay provide deficient performance by not requesting a different trial judge after Judge Gallina had already accepted Mr. Biggs's guilty plea?
> 4. Did Mr. Fay provide deficient performance by failing to adequately advise Mr. Biggs of the consequence of pleading guilty versus going to trial?
> 5. Did Mr. Fay provide deficient performance by not interviewing the law enforcement officers prior to trial?

18

Zachary Biggs had asked that the superior court answer questions two and four in a second reference hearing. Biggs did not expressly ask exploration of issues one and five, but he mentioned these topics in the facts section of his supplemental brief. This court raised on its own question three.

A different judge entertained the second reference hearing over three days in the fall and winter of 2021. The State objected to the second reference hearing on the ground that each issue did not survive the personal restraint petition time bar. The reference hearing judge noted the State's objection, but ruled that this court would later address the time bar. The hearing proceeded with Zachary Biggs and his trial counsel both testifying.

The second reference hearing focused on John Fay's inexperience. At the time Fay represented Zachary Biggs he had not engaged in sexual intercourse for religious reasons. As a result, Fay was "very disconcert[ed]" by the way Biggs talked about the sexual encounter with his former wife. Fay believed that his discomfort probably affected the questions he asked during interviews and at trial. RP, Reference Hearing 2 (RH2) at 58. In hindsight, Fay questioned his competency to represent Biggs at that time. At the time of trial, however, Fay believed he had "a solid case and strategy." At the reference hearing attorney Fay still believed he "adequately [re]presented [his] theory of the case." RP, RH2 at 217.

According to John Fay, during pretrial interviews and at trial, he declined to question about past incidents of consensual intercourse between Stacey and Zachary

19

Biggs, contrary to Biggs' wishes. Fay refrained from asking about earlier sexual encounters on the belief that the rape shield statute applied and because the State had threatened in conversations to add another rape count if Biggs wished to introduce at trial evidence of past sexual experiences. Fay experienced discomfort in speaking about sex in front of jurors. This discomfort extended to Biggs' use of a machete allegedly as a prop for his sexual arousal.

According to John Fay, he counselled Zachary Biggs to waive a jury. Fay believed that a judge would experience less shock by the facts of the case. Fay also viewed Judge Scott Gallina as a favorable trier of fact. Fay knew of multiple serious violent cases wherein Judge Gallina had acquitted defendants or convicted them of lesser-included offenses. Fay also held concern about Biggs being questioned about earlier convictions if he testified. According to Fay, he also counselled Biggs not to testify at trial because Biggs would perform as a poor witness and alienate the trier of fact.

On January 26, 2022, the superior court entered detailed findings of fact and conclusions of law addressing each of this court's questions. The findings read in part:

> 1. Mr. Fay adequately pursued Mr. Biggs's defense of consent. Mr. Fay's decision to not aggressively cross-examine the victim was sound strategy to avoid alienating the trier of fact and to encourage openness from Stacey; and that presenting a more detailed version of the rape/sexual intercourse probably would have alienated and offended the trier of fact, especially in light of Mr. Biggs's "gleeful and aggressive" demeanor when testifying at the reference hearing to the violent portion of the intercourse.
> 2. Mr. Fay's recommendation to waive a jury trial and proceed with a bench trial was sound strategy given the defense bar's favorable record in front of Judge Gallina, the case subject matter, and Mr. Biggs's

20

demonstrated inability to comprehend how his testimony would be perceived by a lay juror, including the potential that his testimony could "offend[] or repulse[]" a lay juror who is less likely to be able to set aside their emotions than a judge.

3. Mr. Fay's decision to not seek a trial in front of another judge was also a sound strategy in light of Mr. Fay's knowledge of Judge Gallina when weighed against the possibility of proceeding with an unknown judge who might not be as favorable.

4. Mr. Fay provided deficient performance when he affirmatively misadvised Mr. Biggs concerning the sentence he faced by going to trial; Mr. Biggs was prejudiced because he, more likely than not, would have accepted the second plea deal had he been correctly advised.

5. Mr. Fay's general strategy of not interviewing law enforcement witnesses is a questionable strategy, but in this instance, there were good reasons to not interview the involved officers prior to trial due to their minimal involvement and the potential with one of the officers that an interview could have harmed Mr. Biggs's case by alerting that officer to an issue that he could have then corrected prior to trial.

See generally 2nd Ref. Hrg. FF/CL.

## LAW AND ANALYSIS

Zachary Biggs' personal restraint petition asserts numerous grounds for relief. We list them in order presented by Biggs:

1. Lack of law library access

2. Ineffective assistance of counsel by Noel Pitner

3. Ineffective assistance by Richard Laws

4. Appearance of fairness regarding Judge Gallina

5. Victim's inconsistent statements made to Deputy McGowan

6. "Omission" of a second plea agreement

7. Law enforcement officers lack of credibility

21

8. Right to be present at trial setting hearing on July 6, 2015

9. Withholding of "Geno" Grende letter

10. Ineffective assistance by John Fay when setting Biggs' case for a bench trial

11. Ineffective assistance by Fay when misadvising Biggs of the risks of going to trial versus accepting the State's revised plea offer

12. Ineffective assistance by Fay when conducting joint interviews with the prosecutor.

13. Ineffective assistance by Fay in not adequately presenting a consent defense

14. Ineffective assistance by Fay when advising Biggs to not testify

15. Ineffective assistance by Fay when counseling Biggs to waive his right to a jury trial

16. Ineffective assistance by Fay when not requesting a different judge preside over the bench trial following withdrawal of the guilty plea

18. Ineffective assistance by not interviewing law enforcement witnesses

19. Cumulative error

After Zachary Biggs filed his personal restraint petition pro se and the court appointed counsel for Biggs, Biggs' counsel raised claims 10, 11, and 12 in a supplemental brief. This court posed contentions 13 to 18 after the first reference hearing. In turn, the State asserts that time bars claims 10 to 18. Some of Zachary Biggs' assigned errors overlap. We review together some of the arguments.

After reviewing the standard of review for a personal restraint petition, we first discuss the State's assertion of the time bar. We conclude that time bars claims 10 through 18. Therefore, we do not address the merits of the contentions.

PRP Standard of Review

To obtain relief in a personal restraint petition, Zachary Biggs must show actual and substantial prejudice resulting from alleged constitutional errors or for alleged nonconstitutional errors a fundamental defect that inherently results in a complete miscarriage of justice. *In re Personal Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). As to ineffective assistance of counsel claims, this court applies the same standard as it does on direct appeal. *In re Personal Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). Zachary Biggs has the burden of showing his counsel's performance fell below an objective standard of reasonableness and a reasonable probability that but for counsel's deficient performance the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner bears the burden to show deficient representation. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018). We need not consider both prongs of *Strickland* if a petitioner fails on one. *In re Personal Restraint of Crace*, 174 Wn.2d 835, 848, 280 P.3d 1102 (2012).

The law distinguishes between ineffective assistance of counsel and deprivation of counsel. With respect to a claim of deprivation of counsel, this court applies the *Cronic*

standard from *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). *Cronic*, decided the same day as *Strickland*, governs total and near-total deprivations of counsel—situations when counsel functions only as "a warm body with a bar card." *State v. Anderson*, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021), *review denied* 199 Wn.2d 1004, 504 P.3d 832 (2022). These situations include (1) denial of counsel at a critical stage of proceedings, (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, and (3) when counsel acts under conditions that even competent counsel could not render effective assistance, such as insufficient time to prepare for trial. *Bell v. Cone*, 535 U.S. 685, 695-96, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).

On direct appeal, we deem *Cronic* violations per se prejudicial. On collateral attack, the burden shifts and the petitioner must prove actual and substantial prejudice. *In re Personal Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992). Recently our Supreme Court reaffirmed *St. Pierre* and held that public trial violations, which are considered structural error on direct appeal, require proof of actual and substantial prejudice when raised for the first time in a personal restraint petition. *In re Personal Restraint of Rhem*, 188 Wn.2d 321, 329-30, 394 P.3d 367 (2017). The one exception to this rule is when the petitioner raises the error within the framework of ineffective assistance of appellate counsel. *In re Personal Restraint of Orange*, 152 Wn.2d 795, 804, 814, 100 P.3d 291 (2004).

To avoid dismissal, the petitioner must support claims with facts and not merely bald or conclusory allegations. *In re Personal Restraint of Cook*, 114 Wn.2d 802, 813-14 (1990). The supporting evidence must be based on "more than speculation, conjecture, or inadmissible hearsay," and failure to meet this standard requires dismissal of the petition. *In re Personal Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). This court will dismiss a petition if it fails to present an arguable basis for relief in law or in fact, given the constraints of the personal restraint petition vehicle. *In re Personal Restraint of Khan*, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015) (plurality opinion).

Time Bar

Zachary Biggs largely ignores the potential of the time bar other than to argue that this court must have deemed claims 10 through 18 timely because we requested a second reference hearing to address questions arising from the issues. We disagree. At that time, we had issued no ruling as to any limitation period. We even removed language from the first reference hearing order concerning the time bar.

We must first discern when the one-year limitation period commenced. The United States Supreme Court denied certiorari of Zachary Biggs' direct appeal on May 28, 2019. Pursuant to RCW 10.73.090(3)(c), Biggs' convictions and sentence became final for time-bar purposes on May 28, 2020. Thus, to receive consideration on collateral attack, Biggs needed to assert discrete claims by May 28, 2020. RCW 10.73.090(1).

Reference hearing counsel did not appear before May 28, 2020 and did not file the supplemental brief that raised new arguments until thereafter.

RCW 10.73.100 lists six exceptions to the personal restraint petition time restriction. Ineffective assistance claims do not fit within any exception to the time bar. *In re Personal Restraint of Adams*, 178 Wn.2d 417, 426, 309 P.3d 451 (2013); *In re Personal Restraint of Stoudmire*, 141 Wn.2d 342, 349, 5 P.3d 1240 (2000). Biggs grounds claims 10 through 18 on ineffective assistance of counsel.

Zachary Biggs' timely filing of his initial petition does not render later claims timely. An amended personal restraint petition does not relate back to the original filing, and any amendment or new claim must be timely raised. *In re Personal Restraint of Haghighi*, 178 Wn.2d 435, 446, 309 P.3d 459 (2013).

Law Library

Zachary Biggs contends that Asotin County interfered with his right to access law library materials while awaiting trial. We agree that RCW 27.24.010 requires each county to maintain a law library. Also, an incarceree enjoys a federal constitutional right of access to the courts, which may require prison facilities to provide inmates with access to adequate law libraries, particularly when the incareree lacks legal counsel. *Lewis v. Casey*, 518 U.S. 343, 346, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977).

We reject this assignment of error for two reasons. First, Zachary Biggs does not present any evidence to prove that Asotin County lacks a law library or that jail officials denied him access to the library. Biggs presents a public records response from the jail stating that the jail does not have a law library. But, RCW 27.24.010 does not require the county law library to be maintained in the jail.

Second, Zachary Biggs does not show any prejudice from an alleged lack of a library. To repeat, a personal restraint petitioner must show prejudice. *In re Personal Restraint of Cook*, 114 Wn.2d 802, 813 (1990).

### Noel Pitner Assistance

Zachary Biggs contends that his first counsel, Noel Pitner, provided ineffective assistance of trial counsel. Biggs performed few services before Biggs procured his removal and began to represent himself with John Fay as stand-by counsel. In 2018, the State of Washington suspended Pitner for two years from practicing law. The misconduct occurred after his representation of Biggs.

Zachary Biggs claims Noel Pitner performed deficiently because he failed to meet with Biggs in the jail, missed multiple court hearings, and lied to Biggs. Biggs shows no prejudice resulting from any ineffective assistance. *In re Personal Restraint of Crace*, 174 Wn.2d 835, 848 (2012). Therefore, we reject this claim.

Richard Laws Assistance

Zachary Biggs next contends that counsel Richard Laws performed ineffectively. Laws supervised trial attorney John Fay. Biggs emphasizes that Washington State disbarred Richard Laws in 2018. The disbarment resulted from conduct occurring after and unrelated to Laws' services on behalf of Biggs. Biggs shows no prejudice related to the disbarment. *In re Personal Restraint of Crace*, 174 Wn.2d 835, 848 (2012).

Zachary Biggs complains that the only supervision provided by Richard Laws to John Fay occurred when Laws spoke in court to address the case schedule. He does not otherwise specify how Laws failed to properly supervise Fay.

To repeat, when a lawyer, such as John Fay, lacks the minimum experience requirements of SID 14.2, the lawyer may associate with another lawyer who meets these qualifications: "Attorneys working toward qualification for a particular category of cases under this standard may associate with lead counsel who is qualified under this standard for that category of cases." SID 14.2 n.1. This standard further reads that an unqualified lawyer may represent a client in a sex offense prosecution if the lawyer is "supervised by or consult[s] with an attorney who has experience representing juveniles or adults in sex offense cases." SID 14.2(D)(ii).

The SID standards do not identify actions or involvement that the supervising attorney must undertake. The standards do not state that the lawyer must meet with the client, appear at hearings, or act as first chair at trial. Because the standards do not

mandate any particular level of involvement, we reject the SID as a basis for a claim of ineffective assistance.

The United State Supreme Court has held that a particular lawyer's youth or inexperience does not undermine the presumption of effective assistance of counsel:

> That conclusion is not undermined by the fact that respondent's lawyer was young, that his principal practice was in real estate, or that this was his first jury trial. Every experienced criminal defense attorney once tried his first criminal case. . . . The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation.

*United States v. Cronic*, 466 U.S. 648, 665 (1984). An ineffective assistance of counsel assertion focuses on counsel's conduct, not counsel's inexperience. Zachary Biggs provides no case law that suggests the adoption of the SID changed this focus.

We also reject any claim that Richard Laws' inaction or failure to supervise supports a complete deprivation of counsel theory. Fay actively represented Zachary Biggs during the time leading to trial and during trial.

In *State v. Flores*, 197 Wn. App. 1, 386 P.3d 298 (2016), this court rejected a claim that a lawyer's failure to satisfy the indigent defense standards results in a deprivation of counsel under *Cronic*. The State charged Johnathon Flores with a Class A felony. His trial counsel lacked the requisite years of service under the SID. On appeal, Flores argued that counsel did not qualify as counsel for purposes of meeting the counsel requirement under the Sixth Amendment because of the breach of the SID. In denying relief, we

observed that finding a violation for failure to comply with the SID made little sense since the standards only apply to appointed defense counsel, not all defense counsel. No standards or guidelines require retained counsel to carry any minimum experience. The law allows a retained lawyer to represent an accused in a capital murder case the day the lawyer gains his or her law license.

Judge Gallina Conviction

Judge Scott Gallina, during 2015, presided over the pretrial proceedings and bench trial of Zachary Biggs. In 2019, the State of Washington charged Gallina with second degree rape, four counts of sexual assault, and indecent liberties. The charges against Gallina related to conduct as early as 2014. In 2022, Gallina pled guilty to one count of third degree sexual assault and one count of fourth degree sexual assault. The State dismissed the remaining charges.

Zachary Biggs argues that Judge Scott Gallina's conviction retroactively disqualified him from hearing his prosecution particularly since Gallina's convictions were also for sex crimes. Biggs asserts that the exceptional sentence imposed on him by Judge Gallina illustrates that Gallina sought to hide his own guilt.

Zachary Biggs cites no legal authority to support his contention that Judge Scott Gallina's conviction voids Biggs' judgment and sentence. His argument is factually wrong also. Judge Gallina did not impose an exceptional sentence. RCW 9.94A.589(b)

demanded that the trial court run Biggs' two convictions consecutive. Gallina imposed a low-end standard range sentence.

In *State v. Williams*, 15 Wn. App. 2d 841, 480 P.3d 1145 (2020), this court addressed whether Judge Scott Gallina's criminal activity violated appearance of fairness principles. At that time, Judge Gallina had been charged, but not convicted, of any crime. We wrote that even if Judge Gallina was later convicted:

> Allegations against Judge Gallina that were unforeseen when [the defendant] was tried and sentenced do not undermine a fundamental underpinning of the judge's verdict and sentence in Mr. Williams's case.

*State v. Williams*, 15 Wn. App. 2d at 848.

Zachary Biggs cites to several cases for general principles of due process and appearance of fairness: *Liljerberg v. Health Services Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988); *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994); *Tatham v. Rogers*, 170 Wn. App. 76, 283 P. 3d 583 (2012); *State v. Bilal*, 77 Wn. App. 720, 893 P. 2d 674 (1992). None of the decisions undercut this court's analysis in *State v. Williams*.

In *State v. Bilal*, the defendant physically assaulted the judge presiding over his case. In *Tatham v. Rogers*, the judge failed to disclose to the parties that Tatham's counsel had been his former law partner, had managed the judge's campaign, had assisted the judge when the judge was arrested for driving while intoxicated, and held other close personal ties to the judge. In *Liljerberg v. Health Services Corp.*, the judge sat on the board of a university that was a party to the litigation. In *Haupt v. Dillard*, defense

31

counsel bullied the judge into ruling for the defense. In each decision, the judge possessed a disqualifying tie to one of the litigants or their lawyer. Judge Scott Gallina held no personal connection to Zachary Biggs.

Impeachment Evidence

Zachary Biggs asserts that the State withheld and his trial counsel failed to elicit from Deputy Michael McGowan impeachment evidence concerning Stacey Biggs. According to Biggs, Stacey presented conflicting statements to McGowan during an interview. Neither the State nor defense counsel informed the court of these inconsistencies in part because neither party called Deputy McGowan to testify. Biggs asserts that the State breached its duty to disclose relevant information and his counsel performed ineffectively.

Zachary Biggs does not identify any inconsistencies in the statement given by Stacey Biggs to Deputy Michael McGowan. To repeat, the petitioner must support claims with facts and not merely bald or conclusory allegations. *In re Personal Restraint of Cook*, 114 Wn.2d 802, 813 (1990). This court will not scour the record to find support for the petitioner's bald assertions. *In re Disciplinary Proceedings Against Whitney*, 155 Wn.2d 451, 467, 120 P.3d 550 (2005); *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998).

Second Plea Offer

Zachary Biggs next contends that the deputy prosecutor engaged in misconduct by denying the existence of a second plea agreement. According to Biggs, after he withdrew his guilty plea to second degree rape, the prosecutor informed the trial court that he would allow Biggs to plead guilty to substitute charges that would be SSOSA eligible. Nevertheless, the State never offered an updated plea agreement. Biggs accuses the prosecutor of lying to the court and his counsel as being ineffective for failing to procure the other plea agreement. According to Biggs, he suffered prejudice because he was denied the opportunity to accept the updated plea agreement. The State responds that it offered an updated plea agreement, but Biggs rejected the offer. Testimony by Zachary Biggs and John Fay, during the reference hearing, confirms the State's position.

Law Enforcement Credibility

Zachary Biggs complains that two of the State's witnesses, Sheriff Deputy Jeff Polillo and Detective Jackie Nichols, lacked credibility. According to Biggs, the Asotin County sheriff fired Deputy Polillo for misconduct in 2016. Detective Jackie Nichols carried a conflict of interest because of marriage to the elected prosecutor. Biggs may relate this assertion to an argument that the State failed to disclose this information or that his trial counsel performed ineffectively by either not garnering the information or failing to cross-examine the witnesses at trial on the impeaching facts.

The State responds that the Asotin County sheriff fired Deputy Jeff Polillo one year after Zachary Biggs' trial for conduct that occurred after Biggs' trial. According to the State, Detective Nichols' relationship to the Asotin County Prosecuting attorney created no conflict because Detective Nichols assisted the prosecution.

We reject Zachary Biggs' contention regarding Sheriff Deputy Jeff Polillo because any impeaching information related to conduct after Biggs' trial. Also, Biggs shows no prejudice from Polillo's testimony. If anything, Deputy Polillo's testimony showed him to suffer from mental illness and confirmed his insistence of innocence.

We reject Zachary Biggs' contention with regard to Detective Jackie Nichols because of the lack of a conflict of interest. Biggs submits no legal authority suggesting a conflict of interest. Issues not supported by argument and citation to authority will not be considered on appeal. *State v. Farmer*, 116 Wn.2d 414, 432, 805 P.2d 200, 812 P.2d 858 (1991).

Right to Presence in Courtroom

Zachary Biggs contends the trial court conducted a hearing, outside his presence on July 6, 2015. According to the July 6 transcript, a jail official informed the court that Biggs refused to appear in court that day. Biggs, without any testimony under oath, asserts that the jail official lied. In his petition, he asserts that other prisoners were then harassing him in the holding cell. He supplies no details of the harassers or the nature of the harassment. He claims prejudice because his absence prevented him from rescinding

34

his jury waiver. He does not explain why he could not have rescinded the waiver on another day.

The State responds that Zachary Biggs presented no evidence to contradict the hearing transcript's recording that he refused to come to court on July 6, 2015. Also, Biggs possessed the opportunity to rescind his jury waiver at a hearing, to which he attended, on July 20, 2015. At the beginning of trial, Biggs did not complain about a bench trial.

We add that Zachary Biggs' argument presupposes a constitutional right to be present at the July 6 hearing. The Sixth and Fourteenth Amendments to the United States Constitution provide criminal defendants with a fundamental right to be present at all critical stages of pretrial and trial. *State v. Irby*, 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011). This right does not extend to every hearing. *State v. Irby*, 170 Wn.2d 874, 881 (2011). The constitutional right extends to whenever the accused's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. *Snyder v. Massachusetts*, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct 1489, 12 L. Ed. 2d 653 (1964); *In re Personal Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994). A defendant lacks a right to be present when his or her presence would be useless, or the benefit but a shadow. *Snyder v. Massachusetts*, 291 U.S. 97, 106-107(1934).

We give some examples. The accused holds no constitutional right to be present when trial counsel withdraws due to ethical reasons. *State v. Hernandez*, 6 Wn. App. 2d 422, 429, 431 P.3d 126 (2018). The right does not extend to responding to a jury question or on addressing strictly legal issues. *United States v. Williams*, 455 F.2d 361, 365 (9th Cir. 1972); *State v. Wright*, 18 Wn. App. 2d 725, 737-38, 492 P.3d 224 (2021), *review denied*, 199 Wn.2d 1001, 501 P.3d 149 (2022); *In re Personal Restraint of Lord*, 123 Wn.2d 296, 306 (1994). Stated differently, the constitutional right applies only to a hearing entailing resolution of disputed facts. *In re Personal Restraint of Lord*, 123 Wn.2d 296, 306 (1994).

Zachary Biggs carries the burden of supporting his claim by legal authority and to show prejudice by reason of denial of any right. He cites no authority that he possessed a right to be present during a trial setting. Since he sat in jail, the trial date lacked relevance to his personal affairs. Although he claims that his trial counsel did not sufficiently interview witnesses, he does not argue that a different trial date would have improved the interviews.

Revival of Right to Jury Trial

Zachary Biggs argues that his withdrawal of his guilty plea voided his earlier waiver of a jury trial. For support, Biggs cites *State v. Bange*, 170 Wn. App. 843, 285 P.3d 933 (2012). But, *Bange* and the cases relied on therein support the opposite conclusion.

In *State v. Bange*, Candi Bange entered a written jury waiver. Before trial, the superior court dismissed the case with prejudice due to State misconduct. The Court of Appeals reversed, and, on remand, the prosecution proceeded to a bench trial based on the prior jury waiver. Bange did not, on remand, object to a bench trial. When the Court of Appeals reviewed the case again, we ruled that a jury waiver remains in effect until successfully challenged, revoked, or expended on a trial.

The Court of Appeals, in *State v. Bange*, rested its holding on a discussion from the Supreme Court in *Wilson v. Horsley*, 137 Wn.2d 500, 974 P.2d 316 (1999). *Wilson* addressed whether a jury waiver carries over to a second trial when the first trial ends in a mistrial. The Supreme Court held that the waiver expires after it is expended on a first trial, even if that trial ends in a mistrial. In reaching that holding, the Supreme Court distinguished the situation when an appellate court reverses a criminal conviction. In such instance, the prosecution stands exactly as it stood before the trial.

In *State v. Bange*, this court also rejected the assertion that the trial court held a duty to ask Candi Bange whether she still wanted a bench trial. This court noted that Bange had not undergone trial before her appeal, the court had not ordered a retrial on demand, Bange never challenged, before the superior court, her waiver, Bange did not seek to revoke the waiver, and, at the commencement of trial, counsel represented that Bange waived a jury and was ready to proceed to trial.

At the time that Zachary Biggs withdrew his guilty plea, the case had yet to proceed to trial. Biggs never challenged his jury waiver after withdrawing his plea.

Letter to Geno Grende

While in jail, Zachary Biggs penned a letter to Geno Grende. The jail seized the letter. At trial, the State confronted Biggs with the letter. In his personal restraint petition, Biggs complains that the State did not let either him or his counsel know of the seizure. The State caught defense counsel off guard with the presentation of the letter at trial. Biggs argues that the State violated its obligation to disclose, in advance of trial, evidence. The State answers that it provided the letter to defense counsel six months in advance of trial. The State adds that the letter did not exculpate Biggs. The record supports the State's position.

In addition to lacking factual support, Zachary Biggs' contention fails as a matter of law. One might believe that the State should also disclose inculpatory information to the defendant in advance of trial so that the defense could better prepare for trial. Nevertheless, the duty to disclose applies to the wrongful withholding of "material exculpatory evidence." *State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). The letter inculpated, not exculpated Biggs.

Counsel Investigation and Interviews

Zachary Biggs faults his trial counsel, John Fay, for failing to adequately investigate the case and interview witnesses. We assume he references witnesses who

38

signed declarations attached to his personal restraint petition. Those witnesses include John Furbee, Christopher Rose, Athena Biggs, Darci Brown, Cheryl Biggs, and Christopher Perini. Biggs further criticizes counsel for leaving an interview of Stacey Biggs before concluding the interview.

Zachary Biggs highlights that the State's attorney falsely described, during trial, Stacey Biggs as a fully functional, credible, and conscientious single mother. Biggs characterizes Stacey as a lying, jealous, chronic methamphetamine abuser. According to Biggs, if only defense counsel had interviewed Stacey sufficiently, counsel would have discovered the true character of Stacey. If counsel had also adequately interviewed witnesses listed for him by Biggs, counsel would have also gained information about Stacey's true personality.

Zachary Biggs did not call Stacey Biggs to testify at the reference hearing. The reference hearing court did not deem Biggs' witnesses' testimony of Stacey's character credible. Therefore, Biggs shows no prejudice by reason of any failure to fully interview or investigate. ER 608(a) and (b) would have precluded admission of most of the limited new impeachment evidence. No witness may give an opinion on another witness' credibility. *State v. Carlson*, 80 Wn. App. 116, 123, 906 P.2d 999 (1995).

Most of Zachary Biggs alleged new witnesses testified at trial. John Fay interviewed John Furbee before trial. This court ordered the first reference hearing principally because of John Furbee's declaration that he overheard Stacey Biggs partially

recant. During the reference hearing, Furbee testified he never heard Stacey deny being raped.

Christopher Rose, who observed Stacey Biggs after the rape, testified, in his declaration, consistently to Stacey's own testimony. John Fay interviewed Athena Biggs before trial. Fay conducted a lengthy interview of Athena Biggs. The prosecutor did not expel Fay from the interview.

Contrary to Darci Brown's declaration, Attorney John Fay interviewed her. Brown testified at trial consistently with her declaration about Stacey Biggs allegedly recanting days after the alleged rape. Contrary to Cheryl Biggs' declaration, John Fay also interviewed her before trial. Cheryl would have testified that Stacey visited Zachary Biggs despite a protection order. Nevertheless, Stacey admitted to this fact at trial.

Christopher Perini did not testify at the reference hearing. Perini possessed little admissible evidence, all of which was cumulative.

Zachary Biggs' petition does not explain what value a private investigator would have brought to his defense. Bare allegations unsupported by citation of authority, references to the record, or persuasive reasoning cannot sustain a restraint petitioner's burden of proof. *In re Personal Restraint of Pheth*, 20 Wn. App. 2d 326, 332, 502 P.3d 920 (2021). To repeat, John Fay interviewed witnesses other than Christopher Perini and Christopher Rose. With respect to Perini, the reference hearing judge found that John Fay exerted reasonable efforts to locate and interview him before trial. The reference hearing

judge found that Fay possessed no duty to interview Rose when Fay knew the substance of his expected testimony, the testimony repeated other witnesses' testimony, and the testimony added minimal value in light of Rose's impeachable criminal history. Biggs assigns no error to these findings. An attorney does not perform ineffectively by failing to interview a witness when counsel already knows the information held by the witness. *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

The record contains no evidence showing that John Fay left Stacey Biggs' interview early. The State's recording device malfunctioned and only recorded fifteen minutes of Stacey's two-hour interview. Biggs does not complain about the recorder. Also, he has no right to recorded witness interviews. *State v. Mankin*, 158 Wn. App. 111, 124, 241 P.3d 421 (2010). Biggs fails to specify the additional admissible information Fay could have extracted in another interview.

Zachary Biggs claims John Fay's deficiencies amounted to a deprivation of counsel under *Cronic*. Because we conclude that Fay did not perform ineffectively, we conclude that Biggs did not suffer complete deprivation of counsel.

Cumulative Error

Zachary Biggs seeks a new trial based on cumulative error. Because we find no error, we find no cumulative error.

41

CONCLUSION

We dismiss Zachary Biggs' personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Pennell, J.

_____
Staab, J.